UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-11582-RGS

STEVEN BELKIN

v.

ALAN C. FOX and ACF PROPERTY MANAGEMENT, INC.

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS

June 9, 2015

STEARNS, D.J.

Steven Belkin brought this lawsuit against Alan C. Fox and ACF Property Management, Inc. (ACF) in the Middlesex Superior Court, asserting common-law claims for breach of fiduciary duty (Count I), fraud (Count II), constructive fraud (Count III), and malicious, oppressive, and fraudulent acts (Count V), as well as statutory claims under Mass. Gen. Laws ch. 93A (Count IV), and California Civil Code § 3294 (Count V). Defendants removed the case on diversity grounds to the federal district court and filed this motion to dismiss. Defendants argue that Counts I, II, III, and V are barred by the statute of limitations or, in the alternative, fail to meet the heightened pleading standard of Fed. R. Civ. P. 9(b). Defendants also contend that

Count IV is not actionable as Belkin failed to send the demand letter required by Chapter 93A prior to filing suit.

## BACKGROUND

The facts as alleged in the Complaint, filed on March 11, 2015, are as follows. In the spring of 2003, Belkin became aware, through his brother Bernard Belkin, of an opportunity to invest in Gainey Village (an Arizona LLC hedge fund). Defendants Fox and ACF (a commercial real estate broker) directly or indirectly manage Gainey Village. After learning from defendants that Gainey Village planned to purchase an interest in a retail shopping mall (The Shop) in Paradise Valley, Arizona, on May 1, 2003, Belkin paid Fox (his cousin) $601,250 f0r a 4.147% share of Gainey Village's investment in The Shop. On July 21, 2005, Fox and ACF announced the sale of The Shop at a profit of $73 million to be distributed to Gainey Village investors. After receiving his share of the profits, Belkin reinvested $893,586 with Gainey Village to purchase shares in two additional shopping centers: Southwest Commons in Denver, Colorado, and Towne Center Brookhill in Westminster, Colorado. Defendants represented in writing that the "purchase price" of Southwest Commons was $62.5 million, and that Gainey Village had paid $43.5 million for Towne Center Brookhill. In 2011, Towne Center Brookhill was foreclosed by its mortgage lender.

Belkin alleges that defendants operated Gainey Village as a fraudulent enterprise. According to the Complaint, defendants acquired the shopping centers in Gainey Village's name using GDA Real Estate Services (GDA) as a "straw man." They then "flipped" the properties and sold them to investors at an inflated price, while pocketing the difference as a secret profit divided amongst or between themselves. Compl. ¶ 23.

GDA is a Colorado LLC owned by Gary Dragul, a "long-time" business associate of Fox. *Id.* ¶ 22. (Neither GDA nor Dragul is named as a defendant). Belkin alleges that Dragul acted as a catspaw for Fox and ACF in the acquisition of The Shop, Southwest Commons, and Towne Center Brookhill. In mid-2012, Belkin was told by his brother that the defendants might have fraudulently inflated the purchase prices of Southwest Commons and Towne Center Brookhill. *Id.* ¶ 33. Belkin states that "he did not and could not have reasonably discovered" the scheme prior to 2012 because he had no reason to be suspicious of the defendants. *Id.* According to Belkin, he "learned for the first time" from his brother that GDA had acquired Southwest Commons for $55.8 million before selling it to Gainey Village for $62.5 million. *Id.* ¶ 19. He also learned that GDA had purchased Towne Center Brookhill for $38 million before selling it to Gainey Village for $43.5 million. Finally, he learned that GDA had purchased The Shop for

$55,724,000 before selling it to Gainey Village for $62 million. Belkin believes that he would have been entitled to a greater share of the profits earned on the sale of The Shop ($1.37 million as opposed to $893,000), had he been given his rightful portion of the difference between Gainey Village's purchase price and the amount that GDA paid. *Id.* ¶ 20. According to the Complaint, defendants did not inform Belkin or other potential investors of any of these facts, including their receipt of "undisclosed fees and unearned sales commissions." *Id.* ¶ 29. Belkin also asserts that the markup of the properties "resulted in less equity" and "thereby . . . contributed to causing the foreclosure" of Towne Center Brookhill and his subsequent losses. *Id.* ¶ 32. Belkin believes that Southwest Commons, like Towne Center Brookhill, will likely also be foreclosed.[1] On February 9, 2015, Belkin served Gainey

---

[1] These three claims raise an issue (not addressed by the parties) as to whether any damages at all are recoverable under Belkin's theories of the case. The fiduciary claims with respect to the loss of profits on the sale of The Shop are quasi-contractual in nature. Belkin appears to argue that he should be deemed an intended third-party beneficiary of a fraudulent kickback arrangement between Fox and ACF (qua Gainey Village) and GDA. Under the doctrine of *pari delictio*, "it has . . . long been settled that the law will not aid either party to an illegal contract to enforce it, neither will it relieve a party to such a contract . . . who seeks to reclaim his money or whatever article of property he may have applied to such a purpose." *Atwood v. Fisk*, 101 Mass. 363, 364 (1869). The true victim of the scheme (assuming that there was one), would seem to be Gainey Village, and not the individual investors who were recruited after the purported loss had been incurred. The claim involving Towne Center Brookhill, that the foreclosure might not have happened had the property been saddled with a lower mortgage (assuming

Village and Fox with a "notice of rescission" of his reinvestment in Gainey Village, which was rejected. *Id.* ¶ 34.

## DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere

---

that Gainey Village would have negotiated down the sale price had the kickback arrangement been exposed), faces formidable issues of causation even in the context of a motion to dismiss. *See Kent v. Commonwealth*, 437 Mass. 312, 320, 322 (2002). Nor is it explained why Belkin's right to recover in the instance of Towne Center Brookhill is superior to that of the secured creditors (who are not identified) who initiated the foreclosure. And finally, the claim involving Southwest Commons, that it might follow Towne Center Brookhill into foreclosure, is not ripe as there is no allegation that any foreclosure has taken place (or even been threatened).

conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010). A complaint will also be dismissed where the statute of limitations bars its claims. *See* Fed. R. Civ. P. 12(b)(6).

### *Statute of Limitations*

Defendants first argue that Belkin's action is time barred by the relevant statute of limitations. A motion to dismiss may be granted if "the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Under California law,[2] fraud actions must be commenced within three years of the accrual of the cause of action. *See* Cal. Civ. Proc. Code § 338 (West 2011). Breaches of fiduciary duty, on the other hand, "must be commenced within four years after the cause of action shall have accrued." *Id.* § 343. A cause of action typically accrues "when . . . it is complete with all of its elements." *Fox v.*

---

[2] In choice of law matters, Massachusetts follows the "functional" approach of Restatement (Second) of Conflict of Laws § 142 (1971). *See Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631 (1985). Under this approach, a forum will apply its own statute of limitations unless no substantial interest of the forum would be served or unless the action would be barred by the statute of limitations of a forum having a more significant relationship to the parties and the occurrence. *Anderson v. Lopez*, 80 Mass. App. Ct. 813, 815 (2011). California, where Fox resides and ACF is incorporated and principally based, has the superior interest in the litigation. Even if Colorado's statute of limitations (where Southwest Commons and Towne Center Brookhill are located) applied to Belkin's common-law claims, it is also three years. *See* Colo. Rev. Stat. Ann. § 13-80-101 (West 2013).

*Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). However, under the "discovery rule" exception recognized by California law, a limitations period does not begin to run until "the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988); *see also Fox*, 35 Cal. 4th at 807 ("The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action."). In other words, a statute of limitations may be extended if a plaintiff is "blamelessly ignorant" of his claim. *Apr. Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 827 (1983); *see also Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001) ("The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry.").

A plaintiff bears the burden of proving that the discovery rule applies. *Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 174 (2012). He must affirmatively plead "'(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Id.* at 175, quoting *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007). To satisfy his burden, a plaintiff cannot rely on conclusory allegations. *See McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151 (1999), as modified (July 14, 1999) ("The burden is on the plaintiff to show diligence,

7

and conclusory allegations will not withstand demurrer."). Whether a plaintiff knew or should have known of an injury so as to trigger the running of a statute of limitations is, with rare exception, a jury issue. *See E-Fab*, 153 Cal. App. 4th at 1316, quoting *Bastian v. Cnty. of San Luis Obispo*, 199 Cal. App. 3d 520, 527 (1988) ("'[O]nce properly pleaded, belated discovery is a question of fact.'").

Defendants assert that Belkin's action is time barred because any alleged harm accrued to him in 2003 and 2005 when he invested in Gainey Village and when The Shop was sold. Defendants contend that Belkin, as a "highly sophisticated investor," could have reviewed public records on file in the Registry of Deeds disclosing the financial details of the acquisitions of The Shop, Southwest Commons, and Towne Center Brookhill. *Id.* at 10-11. These records have been available for public examination since 2005 (and since 2003 for The Shop). *See* Defs. Ex. D, E, and F. Moreover, they argue that even if Belkin can claim a fiduciary duty on their part, it would not relieve him of the duty to reasonably investigate. *See Ferguson v. Yaspan*, 233 Cal. App. 4th 676, 683 (2014) ("The existence of the fiduciary relationship limits the plaintiff's duty of inquiry by eliminating the plaintiff's usual duty to conduct due diligence, but it does not empower that plaintiff to sit idly by when facts sufficient to arouse the suspicions of a reasonable

[person] . . . come to his . . . attention.") (internal citations and quotation marks omitted). Defendants contend that Belkin was on constructive notice in 2005 of the underlying allegations of his Complaint because a simple investigation at the Registry of Deeds would have revealed the sales prices of the properties. This argument misses the point. The issue is not whether Belkin, had he undertaken an investigation, could have learned the truth of the matter (he would have). The issue rather is whether facts arose between Belkin's investment in 2005 and his brother's disclosures in 2012 that should have triggered a duty to investigate. This is a matter that requires further factual development.

### *Particularity*

Defendants also attack the fraud claims as lacking sufficient specificity to satisfy Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Under California law, the elements of fraud are: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Molko v. Holy Spirit Ass'n.*, 46 Cal. 3d 1092, 1108 (1988), *as modified on denial of reh'g* (Dec. 1, 1988). "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically,

all of the elements of the cause of action." *Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 156 (1996).

At a minimum, Rule 9(b) requires that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud. *U.S. ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28, 36 (1st Cir. 2013) (internal quotation marks and citation omitted). To satisfy the requirements of Rule 9(b), plaintiffs must plead specific allegations of fact that give rise to the strong inference that defendants said one thing while knowing another. *See Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 368 (1st Cir. 1994); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("[W]e will conduct a dual inquiry: first, we will determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, we will conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness.").

Defendants point out that most of Belkin's allegations are pled on information and belief and fail to identify "either the source of the 'information' or the reason for each 'belief.'" Defs. Brief at 18. Defendants also assert that Belkin fails to adequately plead the "manner of the alleged

scheme, the connection between GDA and Defendants, the mechanism by which Defendants allegedly profited from the alleged fraud, and the damages suffered by Plaintiff." *Id.*

I agree. As explained in footnote 1, *supra*, the Complaint fails to set out any comprehensible theory of how and to what extent Belkin suffered damages that are independent of those incurred by Gainey Village (or other direct or indirect investors in the properties concerned). The Complaint also provides too few allegations of a factual nature to allow the court to understand the alleged alter-ego relationship between Fox, Gainey Village, and ACF (or even the composition of these latter entities) or the timing of their alleged corrupt transactions with GDA. It is apparent that some amount of veil piercing is required to support Belkin's claims of fraud (to the extent that I understand them), as in a capitalist economy there is nothing untoward (or in any sense fraudulent) in a party's acquiring property at one price and then selling it, even immediately, to another party at a higher price. The vague allegations of the Complaint that defendants made "secret profits" at Belkin's expense and caused him to bear the burden of the Towne Center Brookhill default are attributed solely to the hearsay suppositions of his brother. This Complaint is an exemplar of the type of pleading that Rule 9(b) was intended to suppress.

***Chapter 93A***

A Chapter 93A claim must be commenced within four years of an injury. *See* Mass Gen. Laws ch. 260, § 5A. A jurisdictional prerequisite to filing a Chapter 93A, § 9 claim, however, is the prior service of a proper demand letter. *See Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 287 (1985), quoting *Entrialgo v. Twin City Dodge*, 368 Mass. 812, 813 (1975) ("We have often held that '[a] demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved . . . .'"). Since Belkin has failed to allege service of a demand letter (or present evidence that a presentment was made), his Chapter 93A claim necessarily fails. *See Lingis v. Waisbren*, 75 Mass. App. Ct. 464, 468-471 (2009) (where there is no evidence that a demand letter has been sent, received, or replied to, a Chapter 93A claim will be dismissed).

***California Civil Code § 3294***

Belkin's final claim is that defendants engaged in "malicious, oppressive, and fraudulent acts" in violation of California Civil Code § 3294. Section 3294 allows a plaintiff to recover punitive damages once a defendant is proven "guilty of oppression, fraud, or malice" by "clear and convincing evidence." Since this relief is only available once fraud has been established, it is still subject to the four-year statute of limitations. *See* A*ltman v. PNC*

*Mortg.*, 850 F. Supp. 2d 1057, 1085 (E.D. Cal. 2012).  The court's previous ruling that Belkin may well have the benefit of the discovery rule with respect to the alleged fraud applies to this claim as well.

## ORDER

For the foregoing reasons, defendants' motion to dismiss on statute of limitations grounds is <u>DENIED</u> without prejudice.  Defendants' motion to dismiss Counts I, II, III, and V for failure to comply with Rule 9(b) is <u>ALLOWED</u> without prejudice to the filing of a well-pled Amended Complaint.  The motion to dismiss the Chapter 93A claim (Count IV) is <u>ALLOWED</u> with prejudice.  Plaintiff will be permitted thirty (30) days to file an Amended Complaint.  Should he fail to do so, the case will be terminated.

                                             SO ORDERED.

                                         <u>/s/ Richard G. Stearns</u>
                                         UNITED STATES DISTRICT JUDGE